UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILBERTH GABRIEL MONTANA VARGAS,<br><br>    Petitioner,<br><br>    v.<br><br>SAMUEL OLSON, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement, and<br>BRANDON COWLEY, Jail Commander, Clay County Detention Center,<br><br>    Respondents. | No. 26 CV 1204<br><br>Judge Manish S. Shah |

## ORDER

The petition for a writ of habeas corpus [1] is denied. Kristi Noem is dismissed as respondent. The government reports that petitioner is currently in the custody of Brandon Cowley, Jail Commander for the Clay County (Indiana) Detention Center. Cowley is substituted as a respondent, and the court concludes that Samuel Olson, the Field Office Director for the Chicago Field Office, Immigration and Customs Enforcement, is an appropriate additional respondent with authority over petitioner's detention. The clerk shall substitute the respondents on the docket, enter judgment in favor of respondents (denying the petition for a writ of habeas corpus), and terminate this civil case.

## STATEMENT

Petitioner Wilbreth Gabriel Montana Vargas, a Venezuelan national, has been detained without a hearing to decide whether he may be released by the immigration authorities. [1] ¶¶ 2, 4, 24.[1] Montana Vargas applied for admission into the United States at a port of entry in Texas in 2023. [8-1] at 1. He did not have valid entry documents and was placed in removal proceedings, with an order to appear before an immigration judge in Chicago to show cause why he should not be removed. [8-1] at 1. Immigration officials paroled Montana Vargas into the United States. [1] ¶ 18. The Department of Homeland Security terminated Montana Vargas's parole in June 2025. [1] ¶ 18.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Although Montana Vargas's parole had been terminated, he was not immediately detained. Instead, he remained in the United States and was allowed to pursue relief from removal (based on a fear of return to Venezuela). *See* [8] at 2. The government reports that in October 2025, Montana Vargas conceded to his removability. [8] at 2. He was not detained at that time either and his immigration case continued. [8] at 2. Montana Vargas was detained months later in February 2026 during his scheduled appointment with immigration officials. [8] at 2; [1] ¶ 4.

Application of the statutory framework for detention and release pending removal proceedings has been litigated in a series of recent petitions for writs of habeas corpus. The government here renews its arguments for dismissal raised in those other cases, but also asserts that Montana Vargas's status as someone who sought admission at a port of entry and was paroled into the United States distinguishes his case from the others. [8].

For the reasons stated in *Corona Diaz v. Olson*, No. 25 CV 12141, 2025 WL 3022170, at *1–6 (N.D. Ill. Oct. 29, 2025), I conclude that this court has jurisdiction over the petition (Montana Vargas is challenging his continued detention) and exhaustion is not required (it would be futile).

The government asserts, and petitioner does not dispute, that Montana Vargas was granted parole under 8 U.S.C. § 1182(d)(5)(A). [8] at 2. Petitioner also does not dispute that 8 U.S.C. § 1225(b)(2)(A) requires detention of aliens seeking admission upon presentation at a port of entry. Montana Vargas was seeking admission at a port of entry in September 2023. He was not detained, but only by operation of § 1182(d)(5)(A). That statute allows the Secretary of Homeland Security to parole a noncitizen applying for admission to the United States for urgent humanitarian reasons. When the Secretary decides that the purpose of the parole has been served, the applicant shall "forthwith" be returned to the custody from which he was paroled. 8 U.S.C. § 1182(d)(5)(A). A regulation states that upon termination of parole, the person is "restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Montana Vargas does not argue that his termination of parole was unlawful.[2]

The government did not detain Montana Vargas forthwith upon termination of his parole, but it asserts that his status returned to his status at the time of his parole: a person seeking admission at a port of entry. As the Notice to Appear issued

---

[2] *See Munoz Materano v. Arteta*, 804 F.Supp.3d 395, 418–21 (S.D.N.Y. 2025) (revocation of parole violated Administrative Procedure Act and due process when no case-by-case determination was apparent from the record); *Mata Velasquez v. Kurzdorfer*, 794 F.Supp.3d 128, 146 (W.D.N.Y. 2025) (revocation of parole requires a case-by-case assessment to comply with the statute); *see also Marcano v. Jamison*, No. CV 26-239, 2026 WL 196504, at *3 (E.D. Pa. Jan. 26, 2026) (government failed to show lawful termination of parole).

2

to Montana Vargas put it, he was "an arriving alien." [8-1] at 1. Montana Vargas argues that his status became that of a noncitizen present in the United States without being admitted or paroled, citing 8 U.S.C. § 1182(a)(6)(A)(i). [9] at 2.

The "entry fiction" is just that—a fiction. But it is well established and carries with it constitutional implications. *See Leng May Ma v. Barber*, 357 U.S. 185, 188–89 (1958) (immigration parole gave no foothold in the United States); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (noncitizens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border). Montana Vargas's position suggests a different fiction, that he received a new legal status at the moment of the termination of his parole or his detention. His position describes a practical reality; at the time of his parole termination and his later detention he was a noncitizen present in the United States and not presenting himself at a port of entry. But it does not accurately describe his legal status. He was not, at the time of parole termination or his detention, a noncitizen present without being paroled. 8 U.S.C. § 1182(a)(6)(A)(i). He had been paroled, and the parole statute and corresponding regulation explain what happens upon termination. They are applicable to Montana Vargas. Giving him a different status fills a gap that does not exist and is unnecessary. *But see Coal. for Humane Immigrant Rts. v. Noem*, 805 F.Supp.3d 48, 86 (D.D.C. 2025) (termination of parole does not mean that noncitizen "returns" to the status of applicant for admission).

Detention under § 1225(b)(2) for a noncitizen who has had parole terminated, does not argue that his parole had been terminated unlawfully or without due process, and therefore has been returned to his status as "an arriving" noncitizen, complies with the statutory regime. *See Arcos Tasigchana v. Soto*, No. CV 25-18252 (ZNQ), 2026 WL 266170, at *2 (D.N.J. Feb. 2, 2026). Montana Vargas's petition for a writ of habeas corpus is denied.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: February 27, 2026